IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LEON GRAY,

           Plaintiff,                    No. 2:10-cv-1928 TLN EFB P

    vs.

DAGE,[1]

                                      FINDINGS AND RECOMMENDATIONS

           Defendant.

_____/

       Plaintiff is a state prisoner proceeding through counsel in an action brought under 42 U.S.C. § 1983.  The case was before the undersigned on April 3, 2013, for hearing on defendant's motion for summary judgment.  Dckt. No. 62.  Attorney Robert Kitay appeared at the hearing on behalf of plaintiff; attorney Lynne Stocker appeared on behalf of defendant.  As stated on the record, and for the reasons provided below, defendant's motion must be denied.

**I.    The Complaint**

       This action proceeds on the second amended complaint.  Dckt. No. 31.  According to the allegations therein, plaintiff, an inmate at Mule Creek State Prison, awoke on the morning of May 31, 2009, feeling dizzy and weak, with a feeling of "fullness" in his head.  *Id.* ¶ 12.

---

[1] The Clerk of the Court shall update the case caption to reflect that Dage is the sole defendant in this action.

Plaintiff claims that his right hand, arm, leg, and foot were numb, and that he had slurred speech. *Id.* With the assistance of other inmates, plaintiff allegedly visited the prison's medical clinic on four occasions throughout the day. Each time, plaintiff and/or the inmates who assisted plaintiff allegedly explained plaintiff's symptoms to defendant Dage, the medical technical assistant on duty.[2] Plaintiff claims that he informed defendant that his symptoms were worsening over the course of the day. Defendant allegedly turned plaintiff away at each visit, accusing plaintiff of "faking," and refusing to examine plaintiff. *Id.* ¶¶ 14-22. Plaintiff claims that by 7:00 p.m., he could barely speak, walk, or stand, and that his headache had increased to an unbearable intensity. *Id.* ¶ 23. Eventually, a nurse took plaintiff's vital signs and plaintiff was transported to the San Joaquin General Hospital. *Id.* ¶ 26. Once transported, plaintiff was allegedly diagnosed as having suffered a severe stroke. *Id.* ¶ 27.

Plaintiff alleges that if defendant had listened to and examined plaintiff during any one of his four trips to the medical clinic, he would have recognized plaintiff's symptoms as warning signs for an impending stroke, and could have taken actions avoid the stroke. Plaintiff asserts two causes of action against defendant Dage: (1) deliberate indifference to medical needs in violation of the Eighth Amendment; and (2) failure to obtain reasonable medical care in violation of California Government Code section 845.6. Plaintiff claims to have suffered various injuries because of the stroke, and seeks damages. As stated on the record, and as set forth below, summary judgment is not appropriate as to either of these claims.

## II.   Summary Judgment Standards

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury

---

[2] At the hearing, defense counsel clarified that defendant was actually a licenced vocational nurse.

to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures.  Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own.  When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

1   depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

2   should be entered, after adequate time for discovery and upon motion, against a party who fails

3   to make a showing sufficient to establish the existence of an element essential to that party's

4   case, and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a

5   circumstance, summary judgment must be granted, "so long as whatever is before the district

6   court demonstrates that the standard for entry of summary judgment . . . is satisfied."  *Id.* at 323.

7        To defeat summary judgment the opposing party must establish a genuine dispute as to a

8   material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s)

9   that is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S.

10   at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing

11   law will properly preclude the entry of summary judgment.").  Whether a factual dispute is

12   material is determined by the substantive law applicable for the claim in question.  *Id.*  If the

13   opposing party is unable to produce evidence sufficient to establish a required element of its

14   claim that party fails in opposing summary judgment.  "[A] complete failure of proof concerning

15   an essential element of the nonmoving party's case necessarily renders all other facts

16   immaterial."  *Celotex*, 477 U.S. at 322.

17        Second, the dispute must be genuine.  In determining whether a factual dispute is genuine

18   the court must again focus on which party bears the burden of proof on the factual issue in

19   question.  Where the party opposing summary judgment would bear the burden of proof at trial

20   on the factual issue in dispute, that party must produce evidence sufficient to support its factual

21   claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

22   *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  Rather, the opposing party must, by affidavit

23   or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

24   for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to

25   demonstrate a genuine factual dispute the evidence relied on by the opposing party must be

26   ////

1  such that a fair-minded jury "could return a verdict for [him] on the evidence presented."

2  *Anderson*, 477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

3       The court does not determine witness credibility.  It believes the opposing party's

4  evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255;

5  *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

6  proponent must adduce evidence of a factual predicate from which to draw inferences.  *American*

7  *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J.,

8  dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts

9  at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441

10  (9th Cir. 1995).  On the other hand,"[w]here the record taken as a whole could not lead a rational

11  trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*,

12  475 U.S. at 587 (citation omitted); *Celotex.*, 477 U.S. at 323 (If the evidence presented and any

13  reasonable inferences that might be drawn from it could not support a judgment in favor of the

14  opposing party, there is no genuine issue).  Thus, Rule 56 serves to screen cases lacking any

15  genuine dispute over an issue that is determinative of the outcome of the case.

16  **III.    Defendant's Factual Assertions**

17       The defendant has not submitted a declaration.  Nor has he been deposed.  Instead, to

18  present his version of the facts defendant relies on the entries he made to a medical progress note

19  on the date in question.  His medical progress note indicates that on May 31, 2009, around 8:00

20  p.m., defendant saw plaintiff at the Mule Creek State Prison medical clinic.[3]  Dckt. No. 62,

21  Stocker Decl., Ex. A at 1.  Defendant observed plaintiff as having slight facial deviation and

22  minimal drooling, but noted that this was plaintiff's "usual baseline."  *Id.*, Ex. A at 1.

23  ////

24

25       [3] A June 2009 medical record from the San Joaquin General Hospital notes plaintiff as
   being 73 years old at the time, with a history of hypertension, type 2 diabetes,
26  hypercholesterolemia, and chronic obstructive pulmonary disease.  *Id.*, Ex. B.

Defendant noted that plaintiff complained of left sided "weakness and numbness." *Id.*  Though
seemingly contradictory, defendant also noted that plaintiff did not complain about "loss of
feeling." *See id.* (also noting that plaintiff did not complain of a headache).  After examining
plaintiff, defendant found that plaintiff's grip strength was equal, his pupils were equal and
reactive to light, and that he could  ambulate fifteen feet without difficulties.  *Id.*  In response to
plaintiff's complaints of leg pain, the medication nurse provided plaintiff with pain medication.
*Id.*  After taking plaintiff's vital signs, defendant referred plaintiff to the triage and treatment
area for further evaluation to rule out stroke or transient ischemic attack.  *Id.*

Progress notes from the registered nurse on duty in the triage and treatment area (referred
to in the notes as "TTA") indicate that plaintiff arrived around 9:00 p.m.  *Id.* at 2.  According to
these notes plaintiff told the nurse that when he woke up that morning, his face, hands, and feet
were numb, and that when he attempted to get up, he was stumbling and falling, and that he had
not experienced this problem before.  *Id.*  After an examination and an assessment by the
registered nurse, plaintiff was transferred to San Joaquin General Hospital for further evaluation
and treatment.  *Id.*

Plaintiff was seen at the Emergency Room at San Joaquin General Hospital and was
admitted on June 1, 2009 for a cerebrovascular event (stroke).  *Id.*, Ex. B.  By June 2, 2009,
plaintiff's condition had stabilized and he was ready for discharge.  *Id.*

////

////

////

////

////

////

////

////

1    **IV.    Plaintiff's Factual Assertions**

2          Attached to plaintiff's deposition transcript, submitted with plaintiff's opposition,[4] is a

3    copy of plaintiff's administrative appeal regarding the events of May 31, 2009.  This

4    administrative appeal includes a declaration by plaintiff describing the events, which is dated

5    July 27, 2009, and is signed under penalty of perjury.  Dckt 68, Ex. 9.  Plaintiff makes the

6    following assertions: (1) on the morning of May 31, 2009, he felt dizzy and weak, could not use

7    his right hand, arm, or leg, and had slurred speech; (2) plaintiff's cellmate noticed these

8    symptoms and assisted plaintiff to the medical clinic, because plaintiff could not walk; (3) at the

9    clinic, plaintiff and/or the inmates assisting him explained these symptoms to the defendant,

10   including their belief that plaintiff was having a stroke; (4) defendant refused to treat plaintiff;

11   (5) plaintiff went to the clinic a total of four times that day, but defendant would not examine

12   plaintiff, take his vital signs, or even call a nurse; (6) during the fourth visit, at 2:45 p.m.,

13   plaintiff's speech had become more slurred and his right hand had become useless and "curled";

14   (7) defendant still refused to examine plaintiff and instructed plaintiff to return to his cell; (8)

15   around or after 7:00 p.m., plaintiff was seen by a nurse, who called an ambulance for plaintiff;

16   and (9) approximately 12 hours had passed before plaintiff received any medical attention.[5]

17

18          [4] Because plaintiff's opposition was untimely under Local Rule 230(c), the court issued
     an order to show cause why sanctions should not be imposed.  Dckt. No. 63.  Plaintiff responded

19   to the order to show cause on February 7, 2013.  Dckt. No. 69.  The court heard argument from
     plaintiff's counsel as to the question of sanctions and the court will further address the matter at

20   the May 8, 2013 status conference.

21          Defendant also objects that plaintiff's opposition does not comply with Local Rule
     260(b), which states that any party opposing a motion for summary judgment "shall reproduce

22   the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed
     and deny those that are disputed, including with each denial a citation to the particular portions

23   of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied
     upon in support of that denial." Local Rule 260(b).  However, plaintiff has included a statement

24   of facts that is complete with annotations to the evidence in the record on which he relies.  It is
     apparent from the opposition which facts he disputes and what evidence he relies upon for the

25   claimed disputes.

26          [5] Plaintiff's opposition also includes letters drafted by inmates regarding the events on
     May 31, 2009.  Dckt. Nos. 67, 38, Exs. 2-8.  Defendant objects to those inmate statements as

1   **V.     Discussion**

2        Defendant argues that (1) plaintiff cannot show that he was deliberately indifferent to

3   plaintiff's serious medical needs; (2) that even if plaintiff could, the doctrine of qualified

4   immunity protects him from liability; and (3) that he is immune from liability under California

5   Government Code § 845.6 because defendant examined plaintiff in response to his complaints

6   (including testing reflexes and taking vital signs), provided medication, and sent plaintiff to the

7   triage and treatment area for further evaluation.

8        To succeed on an Eighth Amendment claim predicated on the denial of medical care, a

9   plaintiff must establish that he had a serious medical need and that the defendant's response to

10  that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see*

11  *also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to

12  treat the condition could result in further significant injury or the unnecessary and wanton

13  infliction of pain. *Jett*, 439 F.3d at 1096. Deliberate indifference may be shown by the denial,

14  delay or intentional interference with medical treatment or by the way in which medical care is

15  provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). To act with

16  deliberate indifference, a prison official must both be aware of facts from which the inference

17  could be drawn that a substantial risk of serious harm exists, and he must also draw the

18  inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he

19  knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to

20  take reasonable measures to abate it." *Id.* at 847. "[I]t is enough that the official acted or failed

21

22  inadmissible because they are not made under penalty of perjury (Dckt. No. 72 at 6). While it is

23  true that they are not verified under penalty of perjury and therefore not in a form admissible for
trial, some of the inmate letters describe their percipient observations regarding facts that are in

24  dispute and that information appears to be based on personal knowledge. That content therefore
could be presented in a form admissible at trial and is therefore admissible under Fed. R. Civ. P.

25  56. *See Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir.2003). Moreover, some of the content
was also put into the record at the deposition of plaintiff when the letters were used by defense

26  counsel to examine plaintiff. Nonetheless, for the reasons set forth below, summary judgment
must be denied even without consideration of the letters.

to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.  A physician need

not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights.

*Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently treat a

serious medical condition, even if some treatment is prescribed, may constitute deliberate

indifference in a particular case.  *Id.*

It is important to differentiate common law negligence claims of malpractice from claims

predicated on violations of the Eight Amendment's prohibition of cruel and unusual punishment.

In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not

support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir.

1980) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976)); *see also Toguchi v. Chung*, 391

F.3d 1051, 1057 (9th Cir. 2004).  Moreover, it is well established that mere differences of

opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment

violation.  *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Franklin v. Oregon*, 662 F.2d

1337, 1344 (9th Cir. 1981).

Defendant contends he was not deliberately indifferent to plaintiff's medical needs

because plaintiff's medical records reflect that when plaintiff came to the clinic at 8:00 p.m.

complaining of left-sided weakness and numbness, defendant properly examined and assessed

plaintiff and referred plaintiff to the triage and treatment area to rule out stroke.  Defendant

places great reliance on his notation he wrote regarding that 8:00 p.m. visit.  Defendant's

evidence is silent, however, as to what transpired prior to 8:00 p.m. that day.

According to plaintiff's evidence, the very symptoms that prompted defendant to

examine plaintiff, take his vital signs, and refer him to the triage and treatment area to rule out

stroke, had been known by defendant since that morning.  Plaintiff testifies in the declaration

that he prepared for his from 602 grievance that when he awoke on May 31, 2009, he exhibited

symptoms of a stroke, including difficulty walking, slurred speech, and partial paralysis.  Dckt.

No. 68, Ex. 9.  Plaintiff asserts that with the assistance of other inmates, he went to the medical

clinic that morning, where he explained his symptoms to defendant – including his fear that he

was having a stroke.  *Id.*  Despite plaintiff's outward symptoms and the concerns voiced by

plaintiff and the other inmates, defendant refused to offer plaintiff any assistance.  *Id.*  Instead,

according to plaintiff's declaration, the defendant accused plaintiff of arriving "late for picking

up my medication for the morning and thought this was an attempt to get my medicine after

hours."  *Id.*  Plaintiff says that "even though we continued to explain and make clear to them

[Defendant Dage and Correctional Officer Sapata] th[at] I believe[d] I was having a stroke"

defendant was adamant and the inmates helped plaintiff back to his cell.  *Id.*

Significantly, plaintiff adds that "[w]e went back to the clinic 4 times in all that day, but

they kept sending us away stating I was faking it, that nothing was wrong with me and I was

trying to manipulated the staff.  He (Mr. Dage) would not examine me, take my vital signs or

even call a nurse for me."  *Id.*  Plaintiff states that "[a]t 2:45 p.m. we returned to the clinic for the

last time, because my speech was more slurred and the paralysis on my right side was so bad by

now that my had was curled and unable to use.  After explaining to MTA Dage how I was

increasingly getting worse, he still refused to check me.  I was instructed to return to my cell."

*Id.*

According to plaintiff, after visiting the clinic four times, only to be repeatedly turned

away by defendant without examination, he remained in his cell until finally "my celly & friend

talked the COs into calling for a nurse.  The Nurse (Nurse Winn) heard my signs and symptoms

and took me to TTA via a wheel chair."  *Id.*  He states he was taken by ambulance to a hospital

and was hospitalized for ten days.  After finally receiving medical attention that evening,

plaintiff was diagnosed as having suffered a stroke.  *Id.*

Defendant argues that this declaration testimony cannot defeat summary judgment

because when plaintiff was asked in his deposition to describe his symptoms he could not recall

anything other than "feeling funny."  As the court noted at oral argument, the deposition

transcript plainly shows difficulty by plaintiff remembering and even understanding.  But the

1   transcript shows that plaintiff was examined at length without the benefit of referring to his

2   statement he wrote on July 27, 2009, in support of his Form 602 grievance less than 60 days after

3   the incident when the details were still fresh.  When plaintiff's counsel later attempted to use the

4   602 declaration to refresh plaintiff's recollection, defense counsel repeatedly objected that the

5   questions had already been asked and answered.  While the defendant is free to use the transcript

6   at trial to try to undermine plaintiff's reliability, the poor memory three years later does not

7   render plaintiff's recorded and sworn recollection soon after the event inadmissible.  The

8   declaration is admissible on summary judgment.  *Fraser*, 342 F.3d at 1037.  Moreover, even if

9   the statement were not under penalty of perjury (which it is), the content of that earlier recording

10  of what plaintiff previously recalled is nonetheless admissible.  The Ninth Circuit in *Fraser*

11  noted that the contents of Fraser's diary:

12          are recitations of events within Fraser's personal knowledge and, depending on
            the circumstances, could be admitted into evidence at trial in a variety of ways.
13          Fraser could testify to all the relevant portions of the diary from her personal
            knowledge.  Fed. R. Evid. 602.  If she forgets the exact dates or the details of the
14          event, she may be able to use the diary to refresh her recollection.  Fed. R. Evid.
            612.  Indeed, even inadmissible evidence may be used to refresh a witness's
15          recollection.  *United States v. Frederick*, 78 F.3d 1370, 1376 (9th Cir.1996);
            *United States v. Weller*, 238 F.3d 1215, 1221 (10th Cir.2001); *United States v.*
16          *Muhammad*, 120 F.3d 688, 699 (7th Cir.1997).  If the diary fails to refresh her
            recollection, she might still be able to read the diary into evidence as a recorded
17          recollection under Fed. R. Evid. 803(5).

18  *Id.* at 1037-38.  The same can be said of plaintiff's declaration from July 2009, in which he

19  describes from personal knowledge what he experienced as he sought but was denied medical

20  treatment for an ensuing stroke.  If, at the time of trial, his health and/or memory have

21  deteriorated, or for some other reason his recollection has faded, the earlier recorded information

22  can be used in the same way described in *Fraser*.  It clearly is admissible in opposition to

23  summary judgement.

24          If plaintiff's account of the events set out in the 2009 declaration is credited, a reasonable

25  jury could find that defendant was "aware of facts from which the inference could be drawn that

26  a substantial risk of serious harm exists . . . ."  *Farmer*, 511 U.S. at 837.  A reasonable juror

1   could also conclude that defendant actually "dr[e]w the inference" that plaintiff was faced with

2   "a substantial risk of serious harm," and disregarded that risk at each of plaintiff's four visits to

3   the medical clinic.  *Id.*  Thus, there are triable disputes as to whether defendant responded to

4   plaintiff's objectively serious medical need with a sufficiently culpable state of mind.  *See id.* at

5   842-43 & n.8 (whether a prison official had the requisite knowledge of a substantial risk may be

6   shown through the "fact that the risk was obvious" and the prison official may be liable if "he

7   merely refused to verify underlying facts that he strongly suspected to be true, or declined to

8   confirm inferences of risk that he strongly suspected to exist").

9       While defendant appears to dispute the allegation that plaintiff made four trips to the

10  clinic urgently seeking medical assistance from defendant, defendant himself has submitted no

11  testimony or other evidence on the matter and the only evidence before the court is plaintiff's

12  testimony that he did.  Even if defendant were to submit a declaration disputing the claim, it

13  would merely underscore the point that there is a genuine dispute of material fact over whether

14  plaintiff did, or did not, on four occasions earlier that day go--with the assistance of other

15  inmates--to seek medical assistance but was each time turned away by defendant.  Defendant

16  also notes that his Progress Notes state that when he asked plaintiff what was wrong plaintiff

17  stated "nothing just need pain meds."  Such a statement would certainly be difficult to reconcile

18  with plaintiff's claim that four times during the day he sought help but was turned away.  But the

19  statement is also difficult to reconcile with the Progress Notes of the registered nurse who

20  examined plaintiff shortly after defendant's exam.  The registered nurse's notations also attribute

21  ceratin statements to plaintiff.[6]  Those notations quote plaintiff as saying "I woke up this

22  morning, my face was numb, & my hands and feet were numb.  When I attempted to get up, I

23  was stumbling and falling.  I did not have this problem before."  Dckt. No. 62, Stocker Decl., Ex.

24

25       [6] The nurse's Progress Notes state that plaintiff was brought in by correctional officers
    and then sent to the triage and treatment area "by [the] LVN for generalized weakness and
26  possible stroke."  Dckt. No. 62, Stocker Decl., Ex. A at 2.

1   A at 2.  Why plaintiff would make that statement to the registered nurse, and yet tell defendant, a

2   licensed vocational nurse, that "nothing" was wrong, "just need pain meds" is inexplicable.

3   However, there is clearly a genuine dispute over what information was presented throughout the

4   day to defendant regarding plaintiff's medical needs and risk of stroke, and whether as plaintiff

5   claims, he was taken by other inmates four times to the clinic to seek help but was repeatedly

6   turned away by defendant.[7]  That dispute precludes summary judgment.

7        Defendant also argues that he is entitled to qualified immunity.  Qualified immunity

8   protects government officials from liability for civil damages where a reasonable person would

9   not have known their conduct violated a clearly established right.  *Anderson v. Creighton*, 483

10  U.S. 635, 638-39 (1987).  In determining whether the doctrine of qualified immunity provides a

11  government officer protection, a court must make two inquires: 1) do the facts alleged show that

12  the officer violated a constitutional right; and 2) was the constitutional right well established.

13  *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, (2009) (courts

14  have discretion to decide which of the two *Saucier* prongs to address first).  A plaintiff invokes a

15  "clearly established" right when "the contours of the right [are] sufficiently clear that a

16  reasonable official would understand that what he is doing violates that right."  *Anderson v.*

17  *Creighton*, 483 U.S. 635, 40 (1987).

18       Whether the defendant violated a constitutional right and whether the right was clearly

19  established at the time of the violation are pure legal questions for the court.  *See Phillips v.*

20  *Hust*, 477 F.3d 1070, 1079 (9th Cir.2007).  However, even where a right was clearly established,

21  the question remains whether the defendant's actions violated such right.  That question may or

22  may not turn on facts which are in dispute.  "If a genuine issue of material fact exists that

23

24       [7] To the extent that the dispute turns on the credibility of plaintiff and defendant, the trier
    of fact will have the progress notes to assist in determining which version to believe.  The court
25  must also note, however, that the trier of fact will also likely have the disciplinary records
    regarding defendant at plaintiff's Exhibit C, which indicates a charge against defendant of
26  "Falsifying Patient and/or Hospital Records."  *See* Dckt. 68, Ex. C.

1  prevents a determination of qualified immunity at summary judgment, the case must proceed to

2  trial." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir.2003); *see also Martinez v. Stanford*,

3  323 F.3d 1178, 1183–85 (holding that the district court erred by granting summary judgment

4  where there were genuine issues of material fact regarding the reasonableness inquiry of the

5  second Saucier prong).

6        Here, defendant's qualified immunity argument is predicated on his assertion that

7  "Plaintiff's constitutional rights were not violated because Defendant properly examined and

8  assessed Plaintiff and referred him to the Triage and Treatment Area for further evaluation."

9  Dckt. No. 62 at 8.  Defendant argues that "a reasonable medical professional in Defendant's

10 position would have believed that his actions were lawful." *Id.*  As already discussed, there are

11 genuine issues of material fact as to whether defendant deliberately disregarded plaintiff's need

12 for medical attention during any of plaintiff's four prior visits to the medical clinic that day –

13 when defendant was warned that plaintiff may be having a stroke, and plaintiff exhibited

14 symptoms manifesting a serious medical need.  It was well established as of 2009 that an inmate

15 has a clearly established right not to have his serious medical needs treated with deliberate

16 indifference.  *McGuckin v. Smith*, 974 F.2d 1050 at 1061-62 (9th Cir. 1992).  Accordingly,

17 summary judgment based on qualified immunity is not appropriate on plaintiff's Eighth

18 Amendment deliberate indifference claim.

19       Finally, defendant argues he is immune from liability on plaintiff's claim brought under

20 California Government Code § 845.6.  California Government Code § 845.6 states that a public

21 employee is liable if he or she knows or has reason to know that an inmate requires immediate

22 medical care, but fails to summon such care.  *Watson v. State*, 21 Cal.App.4th 836, 841 (1993);

23 *Jett v. Penner*, 439 F.3d 1091, 1099 (9th Cir. 2006).  "Liability under section 845.6 is limited to

24 serious and obvious medical conditions requiring immediate care," and "to those situations

25 where the public entity intentionally or unjustifiably fails to furnish immediate medical care."

26 *Watson*, 21 Cal.App.4th at 841.  As discussed above, there is evidence that defendant had known

1   since the morning of May 31, 2009, that plaintiff was at risk for a stroke, and that despite

2   plaintiff's four treks to the medical clinic throughout the day, defendant refused to provide

3   plaintiff with any assistance.  Based upon this evidence, there are triable disputes as to whether

4   defendant knew (or should have known) that plaintiff required immediate medical care, and that

5   without justification, he turned plaintiff away and refused to render aid.  Accordingly, summary

6   judgment as to this claim must also be denied.

7   **VI.    Recommendation**

8           For all of the above reasons, IT IS HEREBY RECOMMENDED that defendant's motion

9   for summary judgment (Dckt. No. 62) be denied.[8]

10          These findings and recommendations are submitted to the United States District Judge

11  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

12  after being served with these findings and recommendations, any party may file written

13  objections with the court and serve a copy on all parties.  Such a document should be captioned

14  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

15  within the specified time may waive the right to appeal the District Court's order. *Turner v.*

16  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

17  Dated:  April 8, 2013.

18

19                          EDMUND F. BRENNAN
                            UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

_____

25          [8] In light of this recommendation, the parties shall also be prepared to address at the May
    8, 2013 status conference, whether the court should consider allowing plaintiff to retain an expert
26  for trial.